UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-22834-CIV-TORRES

SAMUEL ROSS,

    Plaintiff,

v.

CARNIVAL CORPORATION, a
foreign corporation, d/b/a
CARNIVAL CRUISE LINES,

    Defendant.
_____/

**ORDER ON PLAINTIFF'S
MOTION TO DISCHARGE CHARGING LIENS OF PRIOR COUNSEL**

This matter is before the Court on Samuel Ross' current counsel David W. Brill's Motion to Discharge Charging Liens of prior counsel ("Brill's Motion") [D.E. 81] filed March 17, 2011; Samuel Ross's prior counsel Sullivan & Company's ("Sullivan") and Farah & Farah's ("Farah") Response in Opposition ("Sullivan and Farah's Response") [D.E. 86] filed late on April 11, 2011; and Brill's Reply [D.E. 87] filed April 22, 2011. For the following reasons, Brill's Motion will be granted in part and denied in part.

### *I.  BACKGROUND*

In June of 2009, Samuel Ross retained G.J. Rod Sullivan, Jr., of Sullivan & Company to represent him on a contingency basis for a personal injury claim arising out of an injury sustained aboard a Carnival Cruise Lines vessel in May 2009. In September of 2009, Ross retained Farah & Farah, in addition to Sullivan & Company. However, Ross eventually discharged Sullivan and Farah in 2010.

Following their discharge as counsel of record, on September 9, 2010, Sullivan and Farah filed a Notice of Charging Lien for attorney's fees and costs in quantum meruit. [D.E. 63.] After the successful settlement of Ross's underlying case against Carnival in January 2011, Brill then filed a motion to discharge Sullivan and Farah's charging liens, or, in the alternative, to reduce them based upon the fact that Sullivan and Farah were fired for cause and that Sullivan and Farah's fees and costs were overstated. Ross claims that he fired Sullivan because Sullivan mis-communicated or misrepresented to the personnel at Brook's Rehabilitation Hospital, where Ross was being treated, that Ross had received a $5,000 check from the defendant. [D.E. 81] The confusion caused by Sullivan's statement resulted in a confrontation between Ross and the hospital personnel, who threatened to discharge Ross prematurely if he did not pay the $5,000 check to the hospital. [*Id.*] This confrontation caused Ross unnecessary amounts of stress at a time when he needed it least. [*Id.*]

Sullivan does not entirely deny Ross' allegations, but instead claims that Ross was "simply shopping for attorneys." [D.E. 86] In support of this allegation, Sullivan states in his affidavit that Ross contacted Sullivan to ask about a large settlement that David W. Brill had obtained in a jury trial for an injured seamen from Norwegian Cruise Lines. [*Id.*] However, Sullivan also states that after he told Ross that a similar result was unlikely, Ross "never raised any objection and did not raise the issue again." [*Id.*]

After Ross "lost all confidence in Sullivan," Ross hired Brian Flaherty of Farah & Farah in September of 2009 and agreed, per Flaherty's request, to retain Sullivan

provided that all contact with Ross be made through Flaherty. [D.E. 81] Ross claims that Flaherty failed to ensure, through the signing of a letter of protection ("LOP"), that Ross, who was then at home convalescing, would receive services such as home care, transportation, etc. [*Id.*] Flaherty states in his affidavit that he attempted to secure the services through an LOP, but was fired before he heard back from the potential services provider. [D.E. 86] Before the potential provider's return call to Flaherty, Ross informed Flaherty that Ross had retained Brill and discharged Flaherty. [*Id.*]

Following the appearance of Brill as substitute counsel for Plaintiff, the matter proceeded and the parties reached a settlement of the action. Based upon the timely charging liens and Sullivan's motion to deposit the settlement funds into the Court registry [D.E. 80], the Court exercised ancillary jurisdiction over the charging lien dispute and Ordered the monies in dispute to be placed in the Court registry for adjudication. [D.E. 85]

## II.  ANALYSIS

### A.  *Legal Standard*

A court has ancillary jurisdiction over the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due the attorneys for work performed in the lawsuit. *See, e.g., Gottlieb v. GC Financial Corp.,* 97 F. Supp. 2d 1310 (S.D. Fla. 1999) and *Zaklama v. Mount Sinai Medical Center,* 906 F.2d 650 (11th Cir. 1990) (both adjudicating post-judgment attorneys' fees disputes under Florida law charging liens). In the context of attorney fee disputes, the exercise

of ancillary jurisdiction is particularly appropriate because courts have inherent jurisdiction to supervise the bar and to insure compliance with the reasonableness standard set forth in the attorneys' rules of ethics and professional responsibility. *E.g., Broughton v. Voss,* 634 F.2d 880 (5th Cir. 1981) ("The basis for exercise of this ancillary jurisdiction is the responsibility of the court to protect its officers . . . and the power of the court 'to do full and complete justice.'") (internal citations omitted).

Pursuant to that jurisdiction here, Sullivan and Farah seek to recover their reasonable fees and costs in quantum meruit for services rendered while engaged under a contingent fee contract. An attorney who performed services on behalf of a client on a contingency fee basis and was discharged before the contingency occurred may recover for services only in quantum meruit. *Sohn v. Brockington*, 371 So. 2d 1089, 1093 (Fla. 1st DCA 1979). If an attorney is discharged for cause, however, forfeiture of some or all of the quantum meruit fee may be appropriate. *See Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller*, 629 So. 2d 947, 955 (Fla. 4th DCA 1993).

The ultimate determination of the amount to be awarded are "matters within the sound discretion of the trial court," and should include a consideration of a multitude of relevant factors in any given case along with the weight to be given each factor. *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d 366, 369 (Fla. 1995) (stating that the factors enumerated in Rule 4-1.5 of the Rules Regulating The Florida Bar should be considered).

### B. *Calculation of Fees*

In calculating attorney's fees in cases where services were rendered on a contingency fee basis, the "lodestar" amount, which consists of multiplying the reasonable hourly rate by the hours reasonably expended, should be the starting point. *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990). As stated above, however, the court is required to examine a variety of relevant factors in order to allow for a consideration that contemplates "the totality of the circumstances surrounding the professional relationship." *Poletz*, 652 So. 2d at 368-69 (stating that the court must ensure that the award is fair to both the attorney and client).

As an initial matter, while Sullivan and Farah's response to Brill's Motion was late, which would justify the Court granting Brill's motion in its entirety by default, the limited prejudice to Brill and the interests of fairness dictate that the Court consider the merits of the issue.

The reasonable hourly rate is not at issue as the parties have agreed to a rate of $350 per hour. After multiplying this rate by the hours reasonably expended by each firm, Sullivan's "lodestar" amount is $18,255.00 and Farah's "lodestar" amount is $43,050.00. Brill, however, disputes the accuracy of the hours that were reasonably expended by both Sullivan and Farah. As neither Sullivan nor Farah makes any effort to dispute Brill's contentions, and based upon the Court's own review of the record, the Court agrees with Brill in so far as the time sheets kept by each firm appear to contain hours that are either overstated or excessive. For example, while Farah states that it spent 5.2 hours in a conference on April 8, 2010, with an expert witness,

Sullivan states that it spent only 0.5 hours in the exact same conference. [D.E. 63-3] Though it is certainly possible that one lawyer participated in that conference only minimally, the failure to address the discrepancy raises doubts as to the accuracy of the timesheets.

As another example, Sullivan states that he worked 0.5 hours to "receive and file the return of service," an activity that would take only a couple of moments, not one half of an hour. [*Id.*]  Therefore, and without examining each and every one of the over 100 entries of hours submitted for compensation spanning seventeen full pages, the Court finds that Sullivan and Farah's hours are at times either overstated, excessive, or both; their quantum meruit awards should, therefore, be subject to a reduction.  *See Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (determining that 569.30 hours submitted for compensation "are extensive enough that we do not expect the district court or magistrate judge to conduct an hour-by-hour analysis in this case").

The decision to reduce Sullivan and Farah's quantum meruit award is further supported by the fact that they were both discharged for cause.  The Court finds that Sullivan's failure to rebut Ross' allegation that Ross was nearly discharged prematurely from Brook's Rehabilitation Hospital is detrimental to Sullivan's claim that Ross was simply shopping for attorneys.  Indeed, a client is reasonably justified in losing confidence in an attorney when that attorney, through either miscommunication or misrepresentation, puts his client's ability to recover at risk.  *See Badillo v. Playboy Entm't Group, Inc.*, No. 07-15858, 2008 WL 5205632 at *2 (11th Cir.

2008) (finding that attorney was discharged for cause where the client lost confidence in the attorney).  Additionally, the Court finds that Ross was justified in losing confidence in Farah because it did not move quickly enough in ensuring the various services that Ross desired through an LOP, especially considering Farah could not move fast enough to timely file its response to Brill's Motion.

And, as a result, Sullivan and Farah cannot recover for time spent opposing Ross's motion to substitute Brill as counsel.  Indeed, the time spent by these firms opposing Ross's motion to substitute counsel was most proximately related to the reasons for their for-cause discharge.  Therefore, any and all time spent wrongly opposing a former client's motion to substitute counsel should be reduced from the firm's "lodestar" amount.  In this case, Sullivan's fees should be reduced by $3,885.00 to $14,370.00, and Farah's fees should be reduced by $2,800.00 to $40,250.00.

Finally, Sullivan and Farah's remaining "lodestar" amounts need to be reduced to take into account the overstatement of hours and the for-cause discharge discussed above.  This case, however, is not so egregious that both a reduction in hours worked and an across-the-board reduction are necessary, as Brill suggests.  *Cf. Scheller*, 629 So. 2d 947 (finding that attorney's threat to abandon client while at the precipice of settlement, if the client did not sign a new fee agreement, warranted at least some forfeiture of the quantum meruit award, but not necessarily a total forfeiture).  The Court finds instead that Sullivan and Farah's fees should simply be reduced by fifty percent as was originally requested by Brill and unchallenged by either Sullivan or Farah.  This reduction ensures an award that is fair to both the attorney and client by

taking into consideration the amount of work done by each attorney, the damage to Ross through loss of confidence in his attorneys, and the questionable entries on each firm's time sheet. *See Searcy, Denney, Scarola, Barnhart & Shipley, P.A.*, 652 So. 2d at 369. Therefore, Sullivan is entitled to $7,185.00 and Farah is entitled to $20,125.00 for services rendered to Ross prior to their discharge.

### C. *Calculation of Costs*

Sullivan and Farah are also seeking an award for all costs incurred prior to their discharge. The total amount requested by Sullivan is $1,582.44 and by Farah is $13,820.38. While most of these costs are ordinarily compensable, *cf.* 28 U.S.C. § 1920, Brill does take issue with several specific charges, all of which go unexplained by Sullivan or Farah. For the reasons stated above, all costs related to the opposition of Ross' motion to substitute counsel will not be reimbursed. Additionally, the costs related to overtime work by a Farah staff member named "Margie" are not compensable. Thus, Sullivan is entitled to $1,416.74 in costs, and Farah is entitled to $12,641.24.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Discharge Charging Liens of Prior Counsel is **GRANTED in part** and **DENIED in part**.

2. Sullivan shall recover from Ross $7,185.00 in attorneys' fees and $1,416.74 in costs, for a total award of **$8,601.74**.

3. Farah should recover from Ross $20,125.00 in attorneys' fees and $12,641.24 in costs, for a total award of **$32,766.24**.

4.	Sullivan and Farah shall submit by letter to the Court's financial section their taxpayer identification numbers, with reference to this Order, for the financial section to disburse to them these amounts from the monies now in the Court registry by Order entered April 11, 2011 [D.E. 86]. Upon receipt of that information, the Clerk is hereby DIRECTED to disburse the total amounts set forth above separately to Sullivan and Farah.

5.	The Clerk is further DIRECTED to disburse the remaining monies in the Court registry to Plaintiff and his counsel, payable to counsel's trust account. Counsel shall submit to the Clerk his taxpayer identification information in order for the Clerk to comply with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of September, 2011.

_____
EDWIN G. TORRES
United States Magistrate Judge